UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATTITUDE WELLNESS, LLC,

Plaintiff,

v.

VILLAGE OF PINCKNEY,

Defendant.

Case No. 21-cv-12021

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

## ORDER AND OPINION DENYING ATTITUDE WELNESS'S MOTION FOR A PRELIMINARY INJUNCTION [#2], GRANTING THE MEANS PROJECT'S MOTION TO DISMISS [#26], AND GRANTING THE MEANS PROJECT'S *EX PARTE* MOTION FOR LEAVE TO FILE EXCESS PAGES [#36]

### I. INTRODUCTION

On August 30, 2021, Plaintiff Attitude Wellness, LLC, d/b/a/ Lume Cannabis Company ("Lume") initiated this action against the Village of Pinckney ("the Village") seeking declaratory and injunctive relief.  ECF No. 1, PageID.2. Lume argues that the Village's ranking matrix for cannabis retail business licenses violates the dormant Commerce Clause, the Michigan State Constitution, and the Michigan Regulation and Taxation of Marihuana Act ("MRTMA").  *Id.* at PageID.2.

Presently before the Court is Lume's Motion for a Preliminary Injunction. *See* ECF No. 2.  The Village filed its Response opposing the Motion on September

1

22, 2021.  ECF No. 10, PageID.123.  Intervening party The Means Project LLC filed its Response on November 19, 2021, after the Court granted its Motion to Intervene.  ECF No. 27, PageID.493.  Lume submitted its Replies on October 6, 2021, and November 29, 2021, respectively.  ECF No. 11, PageID.152; ECF No. 28, PageID.540.

Also before the Court is The Means Project's Motion to Dismiss [#26], filed on November 19, 2021.  The Motion is fully briefed, and oral argument will not aid its disposition.  *See* ECF Nos. 30, 37.  Therefore, the Court elects to resolve the Motion to Dismiss on the briefs.  E.D. Mich. L.R. 7.1(f)(2).  For the reasons discussed below, the Court will DENY Lume's Motion for a Preliminary Injunction [#2], and GRANT The Means Project's Motion to Dismiss [#26].

## II. FACTUAL BACKGROUND

Lume is a cannabis business operating 22 cannabis retailers across Michigan.  ECF No. 1, PageID.2.  It entered the recreational cannabis industry after Michiganders voted to legalize cannabis for recreational use in the general election on November 6, 2018.  MICH. COMP. LAWS § 333.27951.  A month later, the state legislature enacted the MRTMA.  *Id.*  The legislation established a system to license and regulate cannabis businesses.  *Id.*  The MRTMA allows Michigan municipalities to prohibit or limit the number of cannabis businesses within their

communities.   MICH. COMP. LAWS § 333.27956.   Municipalities that limit the number of cannabis business licenses must establish "a competitive process" to "select applicants who are best suited to operate [a cannabis business] in compliance with this act within the municipality."   MICH. COMP. LAWS § 333.27959(4).

The Village initially prohibited recreational cannabis businesses from operating within its city borders, but reversed course following a local election on November 3, 2020.   ECF No. 10, PageID.128–129.   The Village council adopted Ordinance 152 twenty days after the local election, which created regulations governing cannabis business licensure in the Village.   *See* ECF No. 1-4.   The Ordinance authorized six licensed cannabis businesses to operate in the Village.   *Id.* at PageID.26.   Only one cannabis retailer license was available.   *Id.*

Pursuant to the Ordinance and MRTMA, the Village adopted a matrix to rank license applicants ("the Matrix").   ECF No. 1-4, PageID.28.   The Matrix ranked applicants based on a perfect score of 85 points.   *See* ECF No. 1-4.   Businesses needed at least 70 points to become eligible for a license.   ECF No. 10, PageID.130.   The Matrix assigns points based on an applicant's business history, its business plan, its application's completeness, and its impact on the community.   *See* ECF No. 1-5.   The impact on the community portion provided five points to businesses "[a]t least 10% … owned by a resident of Livingston County," and

3

another ten points if "[a]t least 10% of [the business is] owned by a resident of the Village of Pinckney."  ECF No. 1-5, PageID.35.  Two more points are available to applicants who "commit[] to a net zero impact on the environment" and "provid[e] comprehensive plans to use renewable energy and reduce its environmental impact to zero."  *Id.*  Applicants could obtain five additional points for operating their business in a commercially vacant building described as "distressed, blighted, or require[s] significant additional investment."  *Id.*

On June 29, 2021, Lume's legal counsel emailed the Village clerk expressing concerns about the business license selection process.  ECF No. 1-6, PageID.41.  Of specific concern to Lume were the residency points and the environmental impact points.  *Id.* at 42.

The Village received three applications for its single cannabis retailer license.  ECF No. 10, PageID.130.  The Means Project received a perfect score under the Matrix, whereas QPS Michigan Holdings LLC obtained 66 points, and Lume scored last with 65 points.  *Id.*  Lume lost points for not presenting the Village a clean energy plan and choosing not to operate its retail business in a vacant and distressed building.  ECF No. 1-5, PageID.39.  Neither Lume nor QPS Michigan Holdings received any residency points.  *Id.*

On August 24, 2021, the Village clerk notified The Means Project that it won the Village's provisional cannabis retail license.  ECF No. 10-2, PageID.146.

4

The Village council voted unanimously to support the provisional license award. *Id.* Final license approval would come after the State of Michigan issued its operating licenses. *Id.* The Village notified Lume about its retail license decision on August 24, 2021, as well. ECF No. 10-3. PageID.148. Included in its decision letter were instructions on appealing the Village's decision. *Id.* Lume filed the instant action against the Village six days later.

On November 1, 2021, The Means Project filed a Motion to Intervene to protect its property interest in the Village's retail cannabis license. ECF No. 12, PageID.166. The Court set an expedited briefing schedule for the Motion to Intervene and adjourned the Preliminary Injunction hearing. ECF No. 18, PageID.390. On November 18, 2021, the Court granted The Means Project's Motion to Intervene. ECF No. 25, PageID.450. The Intervenor submitted its Response to Lume's Motion for a Preliminary Injunction the very next day. ECF No. 27, PageID.493. After delays related to the COVID-19 pandemic, the Court rescheduled Lume's Preliminary Injunction hearing for March 23, 2022.

### III. LAW AND ANALYSIS

#### A. Preliminary Injunction Legal Standard

Preliminary injunctions are extraordinary remedies reserved only for cases where it is necessary to preserve the status quo. *Enchant Christmas Light Maze &*

*Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 535 (6th Cir. 2020) (citing *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 526 (6th Cir. 2017)).  A plaintiff seeking preliminary relief must establish a likelihood of success on the merits, that they are likely to suffer irreparable harm absent preliminary relief, that the balance of equities tip in their favor, and that an injunction is in the public interest.  *See Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012).  The first two factors—likelihood of success and irreparable harm—weigh most heavily on the Court.  *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

### B. Application to Plaintiff's Motion for a Preliminary Injunction
#### 1. Likelihood of Success on the Merits

To obtain preliminary relief, Lume must make "a strong showing that [it] is likely to succeed on the merits" of its claims.  *Nken*, 556 U.S. at 434.  Lume argues that the Matrix violates the federal and Michigan State constitutions for allocating 15 points based on where a company's owners reside.  ECF No. 2, PageID.67.  It also claims that the Matrix violates the MRTMA by considering an applicant's environmental impact and an applicant's commitment to revitalizing dilapidated buildings.  *Id.* at PageID.68.  The Court examines each challenge below.

### a. United States Constitution

The Commerce Clause empowers Congress "[t]o regulate Commerce … among the several States."  U.S. CONST. ART. I, § 8, cl. 3.  "Although the Clause is framed as a positive grant of power to Congress," *Comptroller of Treasury of Md. v. Wynne*, 575 U.S. 542, 548 (2015), the Supreme Court has "long held that this Clause also prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine and Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019).  This restrictive aspect of the Commerce Clause is generally known as the dormant Commerce Clause.  *Id*.  It is intended "to effectuate the Framers' purpose to prevent a State from retreating into the economic isolation … that had plagued relations among the Colonies and later among the States under the Articles of Confederation." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 (2008) (citations and quotations omitted).   The dormant Commerce Clause applies in equal force to both state and local laws that "discriminate against out-of-state goods or nonresident economic actors[.]" *Tenn. Wine & Spirits Retailers Ass'n*, 139 S. Ct. at 2461.

The Sixth Circuit "typically emplo[ies] a 'two-tiered analysis'" of dormant Commerce Clause challenges.  *Online Merchants Guild v. Cameron*, 995 F.3d 540, 552 (6th Cir. 2021) (quoting *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010)).   At the first tier, the Court must discern whether the challenged

law facially discriminates against intrastate commerce. *Davis*, 553 U.S. at 338. Facially discriminatory laws are "virtually *per se* invalid," *Id.*, (quoting *Or. Waste Systems, Inc. v. Dep't of Env't Quality of Or.*, 511 U.S. 93, 99 (1994)), only surviving judicial scrutiny if they "advance[] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Or. Waste Systems, Inc.*, 511 U.S. at 101. Non-facially discriminatory laws incidentally burden commerce while appearing neutral. *Pike v. Bruce Church Inc.*, 397, U.S. 137, 142 (1970). Those laws are assessed at the second tier and are "upheld unless the burden imposed on [intrastate] commerce is clearly excessive in relation to the putative local benefits." *Id.*

Courts in this judicial district and elsewhere have found cannabis residency provisions to fall under the first tier of dormant Commerce Clause challenges. *See Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. June 17, 2021); *Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985, 991 (W.D. Mo. June 21, 2021); *NPG, LLC v. City of Portland*, No. 20-cv-00208, 2020 U.S. Dist. LEXIS 146958, at *11 (D. Me. Aug. 14, 2020); *but see Original Invs., LLC v. Okla.*, 542 F. Supp. 3d 1230, 1233 (W.D. Okla. June 4, 2021) (sidestepping the dormant commerce clause analysis to deny preliminary relief on other grounds). The parties here cite both *Lowe* and *NPG* in support of their arguments. The Court will therefore apply the first-tier analysis standard to the present challenge.

*Lowe* and *NPG* concerned challenges to local cannabis licensing regimes that either conditioned license eligibility on an applicant's durational residency, or gave resident applicants an advantage over non-residents.  *See, e.g.*, *Lowe*, 544 F. Supp. 3d at 806 (limiting eligible cannabis business license applicants to Detroit residents of "at least ten years."); *NPG*, 2020 U.S. Dist. LEXIS 146958, at *6–*7 (providing five of 35 points to municipal cannabis license applicants whose business was "[a]t least 51% owned by individuals who have been a Maine resident for at least five years.").

In *Lowe*, a business applicant sought injunctive relief enjoining the City of Detroit from implementing its recreational cannabis licensing ordinance.  544 F. Supp. 3d at 806.   The ordinance reserved at least 50 percent of recreational cannabis licenses for Detroit residents of at least ten years and gave those applicants a six-week application window to apply before non-residents.  *Id.* at 807–08.

Similarly, the plaintiff in *NPG* moved to enjoin the City of Portland from implementing a cannabis licensing regime that facially discriminated against out-of-state cannabis business license applicants.  2020 U.S. Dist. LEXIS 146958, at *6.  The court there agreed that the ranking matrix violated the Constitution.  *Id.* at *26 ("I conclude that the City is unlikely to succeed in justifying the residency

preferences in its points matrix.") (citing *Granholm v. Heald*, 544 U.S. 460, 492–93 (2005)).

Lume's dormant Commerce Clause argument traces that made in *NPG*. The Matrix allocates 15 of 85 points to residency, while only reviewing applications that receive at least 70 points. That licensing regime almost requires eligible applicants to have ten percent of owners reside in Livingston County or the Village of Pickney. The Supreme Court has long prohibited economic protectionism of this sort. *See Davis*, 553 U.S. at 337–38.

The Village does not argue that its Matrix is nondiscriminatory. Rather, it contends that non-durational residency requirements deserve different treatment. ECF No. 10, PageID.137. The Village accurately describes the residency requirements in both *Lowe* and *NPG* as durational. *Id.* But the Court is presented no authority demonstrating why a non-durational residency requirement deserves different treatment. "The burden is on the [the Village] to show that the 'discrimination is demonstrably justified.'" *See Granholm*, 554 U.S. at 492 (quoting *Chemical Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 344 (1992)). Moreover, most courts agree that any residency considerations for a cannabis license violates the dormant Commerce Clause. *See Northeast Patients Grp. v. Me. Dep't of Admin. and Fin. Servs.*, No. 20-cv-00468, 2021 U.S. Dist. LEXIS 151027, *12 (D. Me. Aug. 11, 2021) (collecting cases); *Lowe*, 544 F. Supp. 3d at

806; *NPG*, 2020 U.S. Dist. LEXIS 146958, at *6.  The issue is not whether an economic ordinance discriminates based on durational residency.  What matters is that an ordinance's licensing regime discriminates against nonresidents at all.  *See Garber v. Mendez*, 888 F.3d 839, 843 (6th Cir. 2018).

The Means Project's argument differs, claiming the dormant Commerce Clause *per se* rule of invalidity is only triggered by interstate commerce, not intrastate commerce.  ECF No. 27, PageID.510.  Yet the laws in *Lowe* and *NPG* involved intrastate commerce.  And in both cases, the virtually *per se* rule of invalidity applied.  *See Lowe*, 544 F. Supp. 3d at 816; *NPG*, 2020 U.S. Dist. LEXIS 146958, at *25.  The Village therefore bears the burden of demonstrating how the Matrix's discrimination "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."  *See Davis*, 553 U.S. at 338 (citation and quotation omitted).  That burden is not met here.

Neither the Sixth Circuit nor any other circuit court has ruled on the constitutionality of local residency provisions for cannabis licenses.  Absent any authority supporting either the Village or The Means Project's argument, this Court finds Lume likely to succeed on its dormant Commerce Clause challenge to the Matrix.

### b. Michigan State Constitution

Next, Lume argues it is likely to succeed on its equal protection challenge brought under the Michigan State constitution. Under Michigan's equal protection clause, businesses can challenge laws "interfer[ing] with economic or business activit[ies]" that serve no legitimate public purpose. *See Murphy-DuBay v. Dep't of Licensing & Regul. Aff.*, 311 Mich. App. 539, 876 N.W.2d 598, 604 (Mich. Ct. App. 2015). Michigan courts engage in a two-step rational basis inquiry when deciding whether an ordinance violates the State's right to engage in business. *See Murphy-DuBay*, 876 N.W.2d at 604 ("[T]here is a two-step inquiry: (1) whether there is a legitimate public purpose and, if so, (2) whether there is a rational relationship between the legislation and the public purpose sought to be achieved."). An ordinance is presumed constitutional, and the challenger has the burden to rebut that presumption. *See Barrow v. City of Detroit Election Comm'n*, 301 Mich. App. 404, 836 N.W.2d 498, 507 (Mich. Ct. App. 2013).

Lume posits that "favor[ing] local merchants" is an illegitimate public purpose. *See Colonial Baking Co. v. Fremont*, 296 Mich. 185, 189–90 (1941). Like the business applicant in *Lowe*, Lume finds the Matrix's residency points are "pure economic protectionism." 544 F. Supp. 3d at 809. The Means Project avers that *Colonial Baking Co.* is bad law, whereas more recent case law suggests

residency requirements do not offend Michigan's constitution.   ECF No. 27, PageID.507.

Michigan courts have invalidated durational residency requirements for job applicants under the State constitution before.   *See Musto v. Redford Twp.*, 137 Mich. App. 30, 357 N.W.2d 791, 793–74 (Mich. Ct. App. 1984) (finding a one-year durational residency requirement unconstitutional).   To survive rational basis review, the Village must show that the residency points are rationally related to a legitimate government purpose.   *Akhtar v. Charter Wayne*, No. 233879, 2003 Mich. App. LEXIS 307, at *5 (Mich. Ct. App. 2003).   But it is unclear what the Village's legitimate government purpose is here.

One proposition The Means Project presents is that the Matrix's residency points help the Village ensure new businesses are familiar with the community. ECF No. 27, PageID.508.   That argument is in tension with a business's right to remain free from protectionist regulations.   *See Lowe*, 544 F. Supp. 3d at 815 ("[I]n the State of Michigan, there is a right to be considered for [a cannabis] license 'in a fair, reasonable, and nondiscriminatory manner.'") (quoting *Musto*, 357 N.W.2d at 793).   Discrimination based on residency runs afoul to a business's right to fair

consideration in license applications.[1]   As such, economic protectionist policies cannot serve a legitimate government purpose and fail under rational basis review.

As the Court explained *supra*, most residency preferences amount to economic protectionism that are repugnant to the federal and Michigan State constitutions. *But see Barrow*, 836 N.W.2d at 511 (recognizing an exception to durational residency requirements for election candidate eligibility). The Village does not argue otherwise, nor did it respond to Lume's equal protection argument. ECF No. 10, PageID.134–138.   Accordingly, the Court finds Lume, like the plaintiff in *Lowe*, likely to succeed on its Michigan State constitution claim.  544 F. Supp. 3d at 815.


### c. MRTMA

Lume also argues that the Matrix violates the MRTMA because it "awards points for reasons that have nothing to do with MRTMA compliance."  ECF No. 2, PageID.68–69.   The MRTMA instructs localities to "decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with" the MRTMA "within the municipality."

---

[1] The parties also debate whether the Ordinance's Matrix violates Michigan's right to travel.  If the right to travel is implicated, strict scrutiny is triggered.  *See Barrow*, 836 N.W.2d at 511.  The Court declines to entertain the right to travel arguments because the residency points contained in the licensing matrix cannot survive rational basis review.

MICH. COMP. LAWS § 333.27959(4).  Lume contends "a business's environmental practices, and a business's commitment to filling vacant buildings" have nothing to do with MRTMA compliance.  ECF No. 2, PageID.68.  The Matrix thus conflicts with the MRTMA, Lume states, making it unlawful.  The Means finds Lume's construction of the MRTMA too narrow.  ECF No. 27, PageID.503–504.  Instead of couching municipalities' discretion, The Means Project reads the MRTMA as affording localities broad discretion to design their cannabis licensing regimes.  *Id.*

Michigan law guides the Court's statutory construction analysis here.  "The goal of statutory interpretation is to discern and give effect to the intent of the Legislature from the statutes plain language."  *Houdek v. Centerville Twp.*, 276 Mich. App. 568, 741 N.W.2d 587, 596 (Mich. Ct. App. 2007).  When a statute's meaning "is clear and unambiguous, then judicial construction to vary the statute's plain meaning is not permitted."  *Id.*  Courts accord every word or phrase in a statute its plain and ordinary meaning, while accounting for the context in which those words are used.  *See People v. Pinkney*, 501 Mich. 259, 912 N.W.2d 535, 539 (2018) (quoting *Madugula v. Taub*, 496 Mich. 685, 853 N.W.2d 75, 81 (2014)).  The statute at issue here reads in relevant part:

> If a municipality limits the number of marihuana establishments that may be licensed in the municipality … the municipality shall decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with this act within the municipality.

MICH. COMP. LAWS § 333.27959(4).  Municipal laws must be "in direct conflict with" the MRTMA for state law preemption to apply.  *See Ter Beek v. City of Wyoming*, 495 Mich. 1, 846 N.W.2d 531, 541 (2014).  Direct conflicts arise where "the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits." *Id.* (citation omitted).

Courts afford substantial deference to Michigan's local governments when construing municipal ordinances.  *See Cady v. City of Detroit*, 289 Mich. 499, 286 N.W. 805, 807 (1939).  "Michigan is strongly committed to the concept of home rule, and constitutional and statutory provisions which grant power to municipalities are to be liberally construed." *Guertin v. State*, 912 F.3d 907, 938 (6th Cir. 2019) (quoting *Bivens v. Grand Rapids*, 443 Mich. 391, 505 N.W.2d 239, 243 (1993)) (emphasizing how Michigan "[m]unicipalities enjoy significant autonomy over local government functions.").  The Michigan Supreme Court has emphasized how municipalities maintain "great[] latitude to conduct their business[,]" *Associated Builders & Contractors v. City of Lansing*, 499 Mich. 177, 880 N.W.2d 765, 769 (2016), such that Michigan's towns "enjoy not only those powers specifically granted, but they may also exercise *all powers not expressly denied*." *AFSCME v. City of Detroit*, 486 Mich. 388, 662 N.W.2d 695, 707 (2003) (emphasis added) (citation omitted).

Nothing in the MRTMA's plain language signals the legislature's intent to cabin municipal discretion.  Indeed, the statute explicitly instructs municipalities to decide who is best suited to operate a lawful cannabis business in their communities.  MICH. COMP. LAWS § 333.27959(4).  If Michigan's legislature wanted to identify specific factors for localities to consider when companies are "best suited" to receive cannabis licenses, it could have defined criteria in the MRTMA.  *Id.*  But the legislature did not do so.  Instead, Michigan's legislature empowered local governments to choose criteria identifying companies best suited to join their communities.

The Village exercised that discretion here.  It ranked cannabis license applicants based on their business plan and impact on the community, which the MRTMA does not expressly prohibit.  The MRTMA does not "directly conflict" with municipal officials considering an applicant's environmental footprint or building revitalization efforts. *Ter Beek*, 495 Mich. at 20.  Lume argues that the statute constrains municipal discretion to selecting cannabis license applicants based solely on their "suitability to comply with [the] MRTMA" in their communities.  ECF No. 28, PageID.545.  But that interpretation is incorrect for at least two reasons.

First, the MRTMA provision at issue, MICH. COMP. LAWS § 333.27959(4), does not contain the constraining language Lume professes it does.  The Court

should not read language into a statute that is not there.  *See Covenant Med. Center, Inc. v. State Farm Mut. Ins. Co.*, 500 Mich. 191, 895 N.W.2d 490, 495 (2017).  Lume does not cite MRTMA provisions explicitly prohibiting the Village from considering a cannabis license applicant's environmental impact, or an applicant's commitment to revitalizing debilitated buildings.  Unless the Village's practices are contrary to clear constitutional or statutory mandates, its non-residency considerations do not violate the MRTMA.

Second, Michigan Supreme Court precedent runs counter to Lume's reading of the MRTMA as constraining municipal discretion.  As a home rule state, Michigan's localities possess tremendous authority over local affairs, such that power not expressly prohibited is presumed provided.  *See AFSCME*, 662 N.W.2d at 707.  Here, that unprohibited power includes localities considering a cannabis license applicant's environmental impact and building revitalization efforts, since the MRTMA does not bar either factor from consideration.  Absent authority suggesting otherwise, the Court will continue respecting the autonomy Michigan municipalities enjoy.  Accordingly, the Court does not find Lume likely to succeed on its MRTMA claim.

## 2.  Irreparable Harm

Lume next argues that the Matrix caused irreparable harm by preventing Lume from entering the Village's retail cannabis market.[2]  ECF No. 2, PageID.71. "When constitutional rights are threatened or impaired, irreparable injury is presumed."  *Obama*, 697 F.3d at 436.  But plaintiffs seeking a preliminary injunction must establish that without preliminary relief, they are "likely to suffer irreparable harm."  *Id.*  The unconstitutional conduct must cause the irreparable harm.  *Id.*  That is not the case here.

Both *Lowe* and *NPG* are instructive on the irreparable harm prong.  The business applicant in *Lowe* challenged the Detroit residency preference before it took effect.  544 F. Supp. 3d at 816 ("demonstrat[ing] that [plaintiff] will suffer irreparable injury absent an injunction" because she would "be significantly disadvantaged in applying for a recreational [cannabis] retail license.").  The plaintiff in *NPG* argued similarly.  *See* 2020 U.S. Dist. LEXIS 146958, at *14 ("assert[ing] that the points matrix creates an injury-in-fact by denying Plaintiffs the opportunity to participate in Portland's licensing process on equal footing with other applicants.") (internal quotations omitted).  Plaintiffs in both *Lowe* and *NPG* sought preliminary relief before local governments considered their business

---

[2] Lume's witness at the Preliminary Injunction hearing testified that its Michigan retail stores each average $400,000 in annual revenue.  Although the Village has under 3,000 residents, the witness expects the Village's retail operation to perform similarly.

license applications because the requested relief was equal treatment in the application evaluation process.  Timing in both cases proved critical.

The Village draws the Court's attention to the timing distinction between Lume's lawsuit and other cannabis residency challenges.  ECF No. 10, PageID.137.  Lume sought injunctive relief after the Village denied its business application.  The requested relief is an order finding the Ordinance unconstitutional and enjoining the Village from issuing cannabis retailer licenses under it.  ECF No. 1, PageID.14–15.  But unlike prior cannabis license residency challenges, Lume seeks relief after the residency points are proven immaterial.

As the Village correctly notes, even if the Matrix had no residency points, Lume was not going to win the Village's cannabis retail license.  ECF No. 10, PageID.140.  Lume lost two points for not presenting "comprehensive plans to use renewable energy and reduce its environmental impact to zero" in its license application.  ECF No. 1-5, PageID.39.  It lost another three points for choosing not to operate its business in a distressed or blighted commercial structure that is currently vacant.  *Id.*  Without those points, any harm Lume claims it incurred from the residency points is inconsequential because The Means Project had a perfect score.  *Id.* at PageID.34.

Perhaps most fatal to Lume's irreparable harm argument is the Ordinance's severability clause.  ECF No. 1-4, PageID.31.  Even if Lume succeeds on the

merits of its constitutional challenge to the Matrix, the Ordinance it extends from requires only the unlawful portions be severed. *Id.* That severability would keep the Matrix's lawful portions intact, *i.e.*, green business practices and building revitalization efforts. The status quo will remain unchanged because Lume did not receive as many lawful points as other applicants. The Court therefore finds Lume unlikely to suffer irreparable harm absent preliminary relief.

### 3.  Remaining Preliminary Injunction Factors

Finally, the Court looks at the balance of equities and public interest to determine whether preliminary relief is warranted. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Here, the Court weighs the balance of hardships to Lume if preliminary relief is not provided, against the hardships to the Village if a preliminary injunction is issued. As discussed above, Lume did not receive enough points to win the cannabis retail license, even without residency being considered. Moreover, the Village's hardships are great. Another court outside this district found delaying a locality's cannabis licensing process harmful to the public. *See NPG*, 2020 U.S. Dist. LEXIS 146958, at *29. The hardships on The Means Project weigh against an injunction as well. The Intervenor invested $2,200,000 in the Village's cannabis operation, including $500,000 in converting a vacant elementary school into a cannabis grower,

processor, and retailer operation.   ECF No. 27-2, PageID.522. Any delay in the licensing process can cause the Village and The Means Project to fall behind the rest of Michigan's cannabis markets.

Enjoining the Village's cannabis licensing regime could provide Lume the relief it seeks, but it will likely cause the Village and The Means Project greater hardship.   Therefore, the Court finds the balance of equities and public interest to favor the Village.   Because Lume does not face irreparable harm, and because the balance of equities and public interest favor Defendant, the Court will DENY Plaintiff's Motion for a Preliminary Injunction [#2].

### C. Motion to Dismiss

Next, The Means Project moves to dismiss Lume's action.   Dismissal is warranted for at least two reasons, The Means Project states: (1) for lack of standing—subject matter jurisdiction—under   12(b)(1),[3] and (2) Lume's failure to state a claim upon which relief can be granted pursuant to 12(b)(6).   The Means Project seeks dismissal under an abstention theory as well.

---

[3] Intervenor does not bring its standing challenge under Rule 12(b)(1) explicitly, but courts lack subject matter jurisdiction over parties without standing in federal court.   *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) ("Whether a party has [Article III] standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). This Court therefore construes the challenge for lack of subject matter jurisdiction under Rule 12(b)(1), rather than Rule 12(b)(6).

### 1.  Article III Standing

The Means Project first asserts Lume lacks Article III standing.  Standing is the "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiffs must meet three requirements to establish standing: (1) an injury that is concrete and particularized, as well as actual or imminent; (2) a causal relationship between the injury and alleged conduct; and (3) a likelihood that the Court can redress the injury.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  At the motion to dismiss stage, "a facial attack on the pleadings for lack of standing" requires courts to "accept the allegations set forth in the complaint as true, drawing all inferences in favor of the plaintiff."  *See Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019).

Accepting Lume's allegations as true, it has Article III standing.  The Court agrees that Lume sufficiently plead a concrete and particularized injury— discrimination in the Village's license evaluation process—that is traceable to the Village.  ECF No. 30, PageID.586.  The Court could also redress Lume's injury with a favorable decision.  For example, Lume seeks declaratory relief striking the Matrix's allegedly unlawful sections, and an order voiding The Means Project's license.  ECF No. 1, PageID.15.  That relief would likely afford Lume a fair opportunity to obtain the Village's retail cannabis license.  While it remains

speculative whether Lume would win the license, the Court need only consider whether the relief is likely to provide Lume a fair opportunity for consideration. Because this Court can provide such relief,  Lume's lawsuit is justiciable.

The Means Project contends Lume cannot satisfy any Article III standing requirement.  Lume has no property interest in the retail license because Lume lost its bid, The Means Project states, making any potential harm speculative.  The Means Project also argues that Lume cannot win a retail cannabis license because even with the challenged portions of the Matrix struck, Lume could not win more points than The Means Project.  But accepting Lume's allegations as true, Lume and The Means Project would tie with 70 points.  And because the Matrix's tiebreaker relies on unlawful criteria—residency—Lume could still win the retail license based on its allegations.

The Court could afford relief from the stated harm as well.  Again, Lume is not seeking the retail cannabis license as relief.  Instead, Lume seeks a nondiscriminatory evaluation process.  In Michigan, business license applicants have a right to "fair, reasonable, and nondiscriminatory" consideration of their license applications.  *See Lowe*, 544 F. Supp. 3d at 815 (quoting *Musto*, 357 N.W.2d at 793).  As such, the Court finds Lume has Article III standing.

24

### 2.  Failure to State a Claim

Next, The Means Project argues dismissal is warranted under Rule 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss complaints for "failure to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A "claim is facially plausible when the plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951–52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The complaint must contain "more than labels and conclusions" to survive Rule 12(b)(6) dismissal.  *Twombly*, 550 U.S. at 545.  Courts must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Loc. 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014).

Accepting Lume's Complaint as true, the Court concludes it fails to state a claim upon which relief can be granted.  Specifically, the Court finds Lume's

MRTMA arguments conclusory and lacking in factual and legal support.  Unlike a Rule 12(b)(1) Article III standing analysis, courts do not accept legal allegations as true under Rule 12(b)(6) scrutiny.  *See Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  Applied here, Lume's arguments challenging the Village's MRTMA compliance fail to carry their weight.

As discussed above, Lume believes the Village's cannabis licensing scheme violates the MRTMA by providing points to applicants for green business practices and revitalizing dilapidated buildings.  Section 333.27959(4)'s "best suited" language constrains municipalities discretion when selecting cannabis license applicants, Lume continues.  But nothing in the statute, cannons of statutory construction, or Michigan law, suggests Lume's MRTMA reading is correct.  Michigan's localities possess significant governing power over matters the legislature does not expressly prohibit.  *Guertin*, 912 F.3d at 938.  This Court is unaware of any Michigan statute expressly prohibiting municipalities from considering a cannabis license applicant's green business practices or building revitalization efforts.  Indeed, under MICH. COMP. LAWS § 333.27956(2) "municipalit[ies] may adopt other ordinances that are not unreasonably impracticable and" regulate the "place, and manner of operation of [cannabis] establishments[.]"  A business applicant's environmental impact and proposed

business site falls under MICH. COMP. LAWS § 333.27956(2)'s grant of authority. Moreover, this Court is unaware of any court adopting Lume's interpretation of MICH. COMP. LAWS § 333.27959(4) as law.   Absent any authority or factual support, Lume's MRTMA argument is conclusory.

Without a viable MRTMA claim, Lume's case goes up in smoke.  It fails to state a claim upon which this Court can grant relief due to the Ordinance's severability clause.  No matter how much the Matrix runs afoul to the dormant Commerce Clause, no viable claim exists because Lume failed to obtain enough lawful points under the Matrix.  Accordingly, the Court will GRANT The Means Project's Motion to Dismiss [#26] because Lume fails to state a claim upon which relief can be granted.[4]

## IV. CONCLUSION

For the reasons discussed herein, the Court will DENY Lume's Motion for a Preliminary Injunction [#2].

The Means Project's Motion to Dismiss [#26] is GRANTED.

The Means Project's *ex parte* Motion for Leave to File Excess Pages [#36] is GRANTED.

---

[4] The Means Project also argues dismissal is proper because the Court should abstain from matters involving issues of state law.  The Court declines to reach this argument because Lume fails to state a claim upon which relief can be granted.

27

**IT IS SO ORDERED.**

Dated:  April 7, 2022                    /s/ Gershwin A. Drain
                                         GERSHWIN A. DRAIN
                                         UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 7, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager